**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**JOHN GREGORY LAUGHON**, by and through Ginger Laughon as attorney in fact,

    *Plaintiff,*

v.                                    CASE NO: 3:06-cv-00692-HLA-HTS

**CITY OF JACKSONVILLE, CORRECTIONAL MEDICAL SERVICES, INC.**, a Missouri corporation, **MONTY BEANE, RN**, individually and as employee of Correctional Medical Services, Inc., **JOHN JOYCE, MD,** individually and as employee of Correctional Medical Services, Inc., **CAREY GOODMAN, MD,** individually and as employee of Correctional Medical Services, Inc.,

    *Defendants.*

_____/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff sues the Defendants and states:

**Jurisdiction and Venue**

1.    The Court has federal-question jurisdiction because this case includes claims under federal law. The Court has supplemental jurisdiction over the state law claims, which arise from the same common core of events.

2.    Venue is proper in this district because the events giving rise to these claims occurred in Jacksonville, Duval County, Florida.

## Parties

3. The Plaintiff John Gregory Laughon is a resident of Duval County, Florida, and a citizen of the United States of America.

4. Mr. Laughon is presently permanently and totally incapacitated and prosecutes this action through his mother and attorney in fact, Ginger Laughon.

5. The Jacksonville Sheriff's Office ("JSO") is an agency of the Defendant City of Jacksonville.

6. Defendant City of Jacksonville is a municipality of the State of Florida.

7. At the time of Mr. Laughon's injuries, Defendant Correctional Medical Services, Inc. ("CMS"), was, and today remains, a corporation organized and existing under the laws of the State of Missouri.

8. At the time of Mr. Laughon's injuries, CMS was conducting business in the Middle District of Florida.

9. At all times material, CMS had a contractual duty to provide medical care to inmates in JSO's custody, including Mr. Laughon.

10. At the time of Mr. Laughon's injuries, Defendant Monty Beane was a nurse, acting as an agent, apparent agent, and/or employee of CMS.

11. At the time of Mr. Laughon's injuries, Defendant John Joyce was a physician, acting as an agent, apparent agent, and/or employee of CMS.

12. At the time of Mr. Laughon's injuries, Defendant Carey Goodman was a physician,

acting as an agent, apparent agent, and/or employee of CMS.

## General Allegations

13. In January, 2005, Mr. Laughon pled guilty to possession of marijuana and was sentenced to six months incarceration in the custody of JSO.

14. When he entered into custody, he was a thirty-seven-year-old man in good physical condition, except for his long-term suffering from epilepsy resulting from head trauma earlier in his life. Today he is in a persistent vegetative state as a result of severe injuries inflicted by correctional officers and lack of medical treatment by Defendants CMS, Beane, Goodman, Joyce, and JSO.

15. When having a seizure, Mr. Laughon would lose control over his actions and would appear to be noncompliant, disoriented, and aggressive. Mr. Laughon controlled his seizures by taking anti-seizure medications daily.

16. JSO and CMS knew of Mr. Laughon's seizures, his need to take anti-seizure medications every day, and the fact that if he failed to receive and take his medications, he would suffer frequent seizures.

17. Defendants CMS, Beane, Goodman, and Joyce were responsible for providing Mr. Laughon with his medications as prescribed.

18. Nonetheless, Mr. Laughon was not provided his anti-seizure medications as prescribed by JSO and CMS. As a result, he suffered a number of violent seizures. He complained to JSO and CMS personnel on multiple occasions, and both

Defendants were well aware of the increasing frequency of his untreated seizures.

19. Instead of obtaining medical treatment for Mr. Laughon when he was having seizures, correctional officers responded by employing punitive measures and physical beatings and charging him with crimes.

20. For example, on both February 20 and 21, 2005, Mr. Laughon experienced seizures and, in response, correctional officers sprayed him with pepper spray, physically beat him and, as a punitive measure, placed him in a Pro-Restraint Chair for two hours. On both occasions, they charged him with battery of a law enforcement officer.

21. In the early morning hours of February 22, 2005, Mr. Laughon suffered another series of violent seizures. A determination was finally made to transfer Mr. Laughon to the hospital for evaluation and treatment.

22. Between the time Mr. Laughon's seizures started and the time he arrived at the hospital, correctional officers sprayed him with pepper spray and physically beat him, even after he was fully restrained.

23. The beatings caused multiple broken ribs in Mr. Laughon's back, punctured both of his lungs, and caused serious brain damage.

24. Mr. Laughon arrived at the hospital emergency room lying face down on the floor with his arms and legs bound together behind his back, and showing no active vital signs.

25. Although he ultimately survived, Mr. Laughon suffered irreversible brain damage.

He remains in a persistent vegetative state.

26. All conditions precedent to bringing this action have been satisfied or waived.

27. Mr. Laughon, through his mother, has retained the undersigned law firms and is obligated to pay them reasonable attorney's fees for their services, including any amounts awarded by the Court.

**Count I: § 1983 Civil Rights Claim for Deliberate Indifference**

28. The allegations of paragraphs 1-27 are adopted by reference.

29. This is an action under 42 U.S.C. § 1983 as to Defendant Beane for violating Mr. Laughon's civil rights protected by the Constitution of the United States.

30. Defendant Beane was acting under color of state law as a nurse professional providing medical care to JSO inmates, including Mr. Laughon.

31. After being beaten by correctional officers, Mr. Laughon was rendered unconscious, stopped breathing, and clearly needed immediate medical attention.

32. Defendant Beane was actually aware that unless Mr. Laughon received immediate medical attention he would suffer serious complications, including brain damage or death, but consciously disregarded the risk by not immediately obtaining treatment.

33. At the time of Beane's conduct, it was clearly established that his conduct violated Mr. Laughon's constitutional rights.

34. As a direct and proximate result of the foregoing, Mr. Laughon has suffered bodily injury, including severe brain injury and paralysis, and resulting pain and suffering,

mental anguish, lost wages, loss of earning capacity, medical and nursing expenses, loss of capacity for the enjoyment of life, disfigurement, disability, and aggravation of a preexisting condition. These damages are either permanent or continuing, and Mr. Laughon will suffer these losses and damages in the future.

WHEREFORE, Plaintiff demands judgment against Defendant Beane for compensatory and punitive damages, costs, interest, and attorney's fees and trial by jury.

### Count II: Negligence of City of Jacksonville

35. The allegations of paragraphs 1-27 are adopted by reference.

36. The City of Jacksonville owed Mr. Laughon the non-delegable duty to provide reasonable and adequate medical care.

37. The City of Jacksonville further owed an affirmative duty to assist Mr. Laughon because he was being held in JSO's custody and his peril was created by JSO.

38. The City of Jacksonville also owed Mr. Laughon a general duty to exercise a level of care that would be exercised by a reasonable, prudent person in the same or similar circumstances.

39. JSO is an agency of the City of Jacksonville. Accordingly, the City of Jacksonville is liable for the negligence of JSO and its employees and agents acting within the course and scope of their duty.

40. The City of Jacksonville, through its employees and agents, breached its duties to Mr. Laughon by failing to provide adequate medical care, stop the beatings of Mr.

      Laughon, ensure that JSO employees understood that Mr. Laughon's actions were the result of involuntary seizures, and take Mr. Laughon to the hospital sooner.

41. As a direct and proximate result of the foregoing, Mr. Laughon has suffered bodily injury, including severe brain injury and paralysis, and resulting pain and suffering, mental anguish, lost wages, loss of earning capacity, medical and nursing expenses, loss of capacity for the enjoyment of life, disfigurement, disability, and aggravation of a preexisting condition. These damages are either permanent or continuing, and Mr. Laughon will suffer these losses and damages in the future.

WHEREFORE Plaintiff demands judgment against Defendant City of Jacksonville for compensatory damages, costs, and interest and trial by jury.

### Count III: Negligence of CMS

42. The allegations of paragraphs 1-27 are adopted by reference.

43. This is a claim for medical negligence against CMS.

44. CMS contractually agreed to render medical services and owed the duty to provide reasonable and adequate medical care, through its medical staff, to JSO inmates, including Mr. Laughon.

45. At all times material, CMS agreed to render medical services and owed the professional duty to provide reasonable and adequate medical care to Mr. Laughon, as a JSO inmate.

46. At all times material, CMS was aware of Mr. Laughon's history of seizures.

47. At all times material, CMS's agents, Defendants Beane, Joyce and Goodman were also aware of Mr. Laughon's history of epilepsy and seizures.

48. A reasonably competent medical healthcare provider would have known that Mr. Laughon needed to take his anti-seizure medication as prescribed, that Mr. Laughon's conduct was the result of involuntary seizures, that Mr. Laughon needed urgent medical care for his seizures and emergent medical care for his injuries, and that there was a high likelihood that JSO personnel might confuse Mr. Laughon's seizures for disobedience or intentional violence and feel compelled to apply substantial force against Mr. Laughon.

49. CMS, through its agents and employees, breached its duties of care by failing to provide Mr. Laughon with proper medical care as follows:

    a. Failing to provide anti-seizure medication as prescribed;

    b. Failing to properly document the administration of medication or interpret lab results;

    c. Failing to have proper procedures for contacting an on-call physician;

    d. Failing to recognize his seizure symptoms as such, despite having previously documented Mr. Laughon's seizure history and symptoms;

    e. Failing to timely refer Mr. Laughon for necessary medical treatment required by his seizures and his physical injuries;

    f. Failing to timely refer Mr. Laughon for necessary sedation;

g. Failing to refer Mr. Laughon for emergency medical treatment in a timely manner;

h. Failing to recognize Mr. Laughon's physical condition while he was being physically restrained;

i. Failing to properly conduct a medical evaluation prior to giving clearance for transport of Mr. Laughon via the inmate transport van;

j. Failing to provide medical transportation in an emergency vehicle from the Pretrial Detention Facility to Shands Hospital;

k. Failing to inform applicable JSO personnel that Mr. Laughon's conduct was the result of involuntary seizures; and

l. Failing to provide proper medical care.

50. As a direct and proximate result of the foregoing, Mr. Laughon has suffered bodily injury, including severe brain injury and paralysis, and resulting pain and suffering, mental anguish, lost wages, loss of earning capacity, medical and nursing expenses, loss of capacity for the enjoyment of life, disfigurement, disability, and aggravation of a preexisting condition. These damages are either permanent or continuing, and Mr. Laughon will suffer these losses and damages in the future.

WHEREFORE Plaintiff demands judgment against Defendant CMS for compensatory damages, costs, and interest and trial by jury.

### Count IV: Negligence of Monte Beane

51. The allegations of paragraphs 1-27 are adopted by reference.

52. This is a claim for medical negligence against Monte Beane.

53. Defendant Beane agreed to render medical services and owed the duty to provide reasonable and adequate medical care to JSO inmates, including Mr. Laughon.

54. At all times material, Defendant Beane was aware of Mr. Laughon's history of seizures.

55. A reasonably competent medical healthcare provider would have known that Mr. Laughon needed to take his anti-seizure medication as prescribed, that his conduct was the result of involuntary seizures, that Mr. Laughon needed urgent medical care for his seizures and emergent medical care for his injuries, and that there was a high likelihood that JSO personnel might confuse Mr. Laughon's seizures for disobedience or intentional violence and feel compelled to apply substantial force against Mr. Laughon.

56. Defendant Beane breached his duty of care by failing to provide Mr. Laughon with proper medical care as follows:

    a. Failing to provide anti-seizure medication as prescribed;

    b. Failing to recognize his seizure symptoms, despite having previously documented Mr. Laughon's seizure history and symptoms;

    c. Failing to timely refer Mr. Laughon for necessary emergency treatment due to

his seizures and to his physical injuries;

d. Failing to timely refer Mr. Laughon for necessary medical treatment;

e. Failing to refer Mr. Laughon for emergency medical treatment in a timely manner;

f. Failing to recognize Mr. Laughon's visible medical distress while he was being physically restrained;

g. Failing to properly conduct a medical evaluation prior to giving clearance for transport of Mr. Laughon via the inmate transport van;

h. Failing to provide appropriate emergency transportation from the Pretrial Detention Facility to Shands Hospital;

i. Failing to inform applicable JSO personnel that Mr. Laughon's actions were the result of involuntary seizures; and

j. Failing to provide proper medical care.

57. As a direct and proximate result of the foregoing, Mr. Laughon has suffered bodily injury, including severe brain injury and paralysis, and resulting pain and suffering, mental anguish, lost wages, loss of earning capacity, medical and nursing expenses, loss of capacity for the enjoyment of life, disfigurement, disability, and aggravation of a preexisting condition. These damages are either permanent or continuing, and Mr. Laughon will suffer these losses and damages in the future.

WHEREFORE Plaintiff demands judgment against Defendant Beane for

compensatory damages, costs, and interest and trial by jury.

## Count V: Negligence of John Joyce, MD

58. The allegations of paragraphs 1-27 are adopted by reference.

59. This is a claim for medical negligence against Defendant Joyce, a psychiatrist.

60. Since Mr. Laughon is incapacitated and completely unable to communicate, plaintiff's counsel has been forced to rely on formal discovery to determine the details of Mr. Laughon's medical care while incarcerated, including the involvement on Defendant Joyce.

61. The extent of Defendant Joyce's involvement and his breaches of the standard of care were not ascertainable by reviewing medical records.

62. As a result, plaintiff's counsel did not become aware of Defendant Joyce's negligence in plaintiff's medical care until taking several depositions, including Nurse Monte Beane on January 29, 2007 and Defendant Joyce on May 17, 2007. At those depositions, plaintiff's counsel obtained new, critical facts and information first establishing Defendant Joyce's breach of the standard of care.

63. Defendant Joyce contractually agreed to render professional psychiatric services and medical care and owed the duty to provide reasonable and adequate psychiatric and medical care to JSO inmates, including Mr. Laughon.

64. At all times material, Joyce knew or should have known of Mr. Laughon's history of seizures.

65. A reasonably competent medical healthcare provider would have known that Mr. Laughon needed to take his anti-seizure medication as prescribed, that his conduct was the result of involuntary seizures, that Mr. Laughon needed urgent medical care for his seizures and emergent medical care for his injuries, and that there was a high likelihood that JSO personnel might confuse Mr. Laughon's seizures for disobedience or intentional violence and feel compelled to apply substantial force against Mr. Laughon.

66. Defendant Joyce breached his duties of care by failing to provide Mr. Laughon with proper medical care as follows:

   a. Failing to read Mr. Laughon's medical file containing reports from his treating neurologist;

   b. Failing to ensure that anti-seizure medication was provided on a regular basis;

   c. Failing to properly monitor medication dosage levels;

   d. Failing to properly prescribe medications including sedation as needed;

   e. Failing to be available for consultation while on-call;

   f. Failing to provide current telephone contact information while on-call;

   g. Failing to timely respond to a telephone call in an emergency situation;

   h. Failing to recognize Mr. Laughon's seizure symptoms as such, despite having documentation of Mr. Laughon's seizure history and symptoms in the medical chart;

  i. Failing to timely refer Mr. Laughon for necessary medical treatment due to his seizures and his physical injuries;

  j. Failing to timely refer Mr. Laughon for necessary medical treatment;

  k. Failing to refer Mr. Laughon for emergency medical treatment in a timely manner;

  l. Failing to inform applicable JSO personnel of Mr. Laughon's seizure history and symptoms; and

  m. Failing to provide proper medical care.

67. As a direct and proximate result of the foregoing, Mr. Laughon has suffered bodily injury, including severe brain injury and paralysis, and resulting pain and suffering, mental anguish, lost wages, loss of earning capacity, medical and nursing expenses, loss of capacity for the enjoyment of life, disfigurement, disability, and aggravation of a preexisting condition. These damages are either permanent or continuing, and Mr. Laughon will suffer these losses and damages in the future.

WHEREFORE Plaintiff demands judgment against Defendant Joyce for compensatory damages, costs, and interest and trial by jury.

### Count VI: Negligence of Carey Goodman, MD

68. The allegations of paragraphs 1-27 are adopted by reference.

69. This is a claim for medical negligence against Defendant Goodman, medical director of CMS.

70. Since Mr. Laughon is incapacitated and completely unable to communicate, plaintiff's counsel has been forced to rely on formal discovery to determine the details of Mr. Laughon's medical care while incarcerated, including the involvement on Defendant Goodman.

71. The extent of Defendant Goodman's involvement and failures was not ascertainable by reviewing medical records.

72. As a result, plaintiff's counsel did not become aware of Defendant Goodman's negligence in plaintiff's medical care until taking several depositions, including Defendant Joyce on May 17, 2007 and Defendant Goodman on July 14, 2007. At those depositions, plaintiff's counsel obtained new, critical facts and information first establishing Defendant Goodman's breach of the standard of care.

73. Defendant Goodman contractually undertook and agreed to render professional medical services and owed the duty to provide reasonable and adequate medical care to JSO inmates, including Mr. Laughon.

74. At all times material, Goodman knew or should have known of Mr. Laughon's history of seizures.

75. A reasonably competent medical healthcare provider would have known that Mr. Laughon needed to take his anti-seizure medication as prescribed, that his conduct was the result of involuntary seizures, that Mr. Laughon needed urgent medical care for his seizures and emergent medical care for his injuries, and that there was a high

likelihood that JSO personnel might mistake Mr. Laughon's seizures for disobedience or intentional violence and feel compelled to apply substantial force against Mr. Laughon.

76. Defendant Goodman breached his duties of care by failing to provide Mr. Laughon with proper medical care as follows:

   a. Failing to adequately review Mr. Laughon's medical chart;

   b. Failing to physically examine Mr. Laughon;

   c. Failing to ensure that anti-seizure medication was provided on a regular basis;

   d. Failing to properly monitor medication dosage levels;

   e. Failing to timely review lab results;

   f. Failing to properly prescribe medications, including sedation as needed;

   g. Failing to reduce excessive dosages of certain anti-seizure medications;

   h. Failing to recognize Mr. Laughon's seizure symptoms, despite having documentation of Mr. Laughon's seizure history and symptoms in the medical chart;

   i. Failing to timely refer Mr. Laughon for necessary medical treatment due to his seizures and his physical injuries;

   j. Failing to timely refer Mr. Laughon for necessary medical treatment;

   k. Failing to refer Mr. Laughon for emergency medical treatment in a timely manner;

  l. Failing to inform applicable JSO personnel of Mr. Laughon's seizure history and symptoms; and

  m. Failing to provide proper medical care.

77. As a direct and proximate result of the foregoing, Mr. Laughon has suffered bodily injury, including severe brain injury and paralysis, and resulting pain and suffering, mental anguish, lost wages, loss of earning capacity, medical and nursing expenses, loss of capacity for the enjoyment of life, disfigurement, disability, and aggravation of a preexisting condition. These damages are either permanent or continuing, and Mr. Laughon will suffer these losses and damages in the future.

WHEREFORE Plaintiff demands judgment against Defendant Goodman for compensatory damages, costs, and interest and trial by jury.

         **SPOHRER & DODD, P.L.**

         */s/ Galen D. Bauer*
         **ROBERT F. SPOHRER, ESQ.**
         Florida Bar No. 184500
         **GALEN D. BAUER, ESQ.**
         Florida Bar No. 14156
         701 West Adams Street, Suite 2
         Jacksonville, FL 32204
         Telephone: (904) 309-6500
         Facsimile: (904) 309-6501
         E-mail: rspohrer@sdlitigation.com
         E-mail: gbauer@sdlitigation.com

         and

        **SEAN B. CRONIN, ESQ.**
        Florida Bar No. 146447
        Cronin & Maxwell, LLC
        2223 Oak Street
        Jacksonville, Florida 32204
        Telephone: (904) 388-9555
        Facsimile: (904) 358-7301
        E-mail: sean@croninmaxwell.com
        ***Counsel for Plaintiff***

Certificate of Service

    I hereby certify that the foregoing Amended Complaint and Demand for Jury Trial was filed on November 30, 2007, with the CM/ECF system of the U.S. District Court for the Middle District of Florida, which will provide electronic notice to:

    **Howard M. Maltz, Esq.**, counsel for defendant City of Jacksonville
    **Patrick H. Telan, Esq.**, counsel for defendant Correctional Medical Services, Inc.
    **Vincent James Facciolo, Esq.**, counsel for defendant Monty Beane, RN.

        */s/ Galen D. Bauer*
        Attorney